IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROSALYN CHRISTOPHERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 20-545 |
| vs. | ) |
| | ) |
| POLYCONCEPT NORTH AMERICA, INC., | ) |
| | ) |
| Defendant. | |

**MEMORANDUM OPINION**

The above-captioned matter involves alleged violations of the Family and Medical Leave Act (hereinafter "FMLA" or the "Act"), Title VII of the Civil Rights act of 1964 ("Title VII"), and 42 U.S.C. § 1981, brought by Plaintiff Rosalyn Christopherson against her former employer Polyconcept North America, Inc. ("Polyconcept"). Presently before the Court is Polyconcept's Motion to Dismiss the Amended Complaint (Docket Nos. 35 & 37) and brief in support thereof (Docket No. 38), Christopherson's Opposition to Motion to Dismiss (Docket No. 42), and Polyconcept's Reply Brief (Docket No. 44). For the reasons that follow, Polyconcept's motion is granted in part and denied in part.

**I.   Background**

Christopherson filed an initial complaint against Polyconcept on April 16, 2020. (Docket Nos. 1, 3, 5). Therein she alleged that Polyconcept and several individual defendants interfered with her rights under the FMLA, 29 U.S.C. §§ 2601, *et seq.* (Docket No. 5). Polyconcept filed a Partial Answer (Docket No. 12) and a Partial Motion to Dismiss the Complaint (Docket No. 14). Ruling on the Partial Motion to Dismiss the Complaint, the Court dismissed some of Christopherson's claims as untimely and dismissed all claims as to the individual defendants but did so without prejudice to give Christopherson an opportunity to address the shortcomings of her

allegations by amendment.  (Docket Nos. 24, 25).  Thereafter Christopherson filed an Amended Complaint (Docket No. 26), and—just days later—a Motion to Amend Complaint (Docket No. 27).  Polyconcept opposed Christopherson's motion to file this second amended complaint.  (Docket No. 29).  The Court denied the motion to amend the Amended Complaint (Docket No. 34) and entered a separate Order dismissing Christopherson's claims against the individual defendants with prejudice in view of Christopherson having not asserted any claims against them in her Amended Complaint.  (Docket No. 33).  After that, Polyconcept filed its motion to dismiss (Docket Nos. 35 & 37) which Christopherson eventually opposed (Docket No. 42).

As in her initial complaint, Christopherson seeks to allege facts in her Amended Complaint that support several FMLA claims.  In her Amended Complaint, she also newly alleges retaliation in violation of Title VII and Section 1981.[1]

More specifically, Christopherson alleges that she started working for Polyconcept in October 2014, that her position became permanent in January 2015, and that she was first afforded an FMLA intermittent/reduced schedule leave in 2016.  (Docket No. 26 at lines 29–32).  The Amended Complaint contains four incidents—titled "ALLEGATIONS"—in 2017, 2018, and 2019, which correspond to four claims that Polyconcept interfered with Christopherson's rights under the Act.

### First Allegation

With respect to Christopherson's ***first allegation***, she alleges that she was scheduled for retraining in embroidery in April 2017 and that she was asked to work a ten-hour shift during which time she would be trained for eight hours when her schedule overlapped with that of the trainer.  (*Id.* at lines 27–28, 32–37).  She alleges she told two supervisors she would "act on her

---

[1] The Court has jurisdiction over Christopherson's federal claims pursuant to 28 U.S.C. § 1331.

2

FMLA" to reduce her shift to the eight hours when she could be trained, but further alleges that she was told "that she could not utilize her FMLA but would have to remain on the ten-hour schedule." (*Id.* at lines 34–38). On an unspecified date presumably around this same time, Christopherson fell asleep due to exhaustion and was written up. (*Id.* at lines 40–41). After that, Christopherson unilaterally "invoked her FMLA privileges" by "calling off on the 'call-off' line each morning for two hours, arriving for an eight-hour shift coinciding with the trainer's schedule." (*Id.* at lines 44–46). But she was consistently told that she could not invoke her FMLA privileges thus. (*Id.* at lines 49–51). Christopherson calls this a "deliberate" refusal of her FMLA rights. (*Id.* at line 52).

*Second Allegation*

With respect to Christopherson's **second allegation**, she alleges that she was approved for intermittent/reduced schedule leave under the Act in October 2017, and that this was a continuation of her approval for leave in October 2016. (*Id.* at lines 77–80). Christopherson alleges that her medical provider specified "no mandatory overtime" as part of her leave, but that she was told her medical provider indicated "no overtime." (*Id.* at lines 83–84). According to the Amended Complaint, this leave should have been approved in May 2017 around the same time that Christopherson started calling off two-hours per day after being told she could not invoke her leave to work eight hours instead of a ten-hour shift. (*Id.* at lines 81–83). Upon approval of her leave, Christopherson alleges she was told by Polyconcept to work an eight-hour day from 2:00pm to 10:00pm with no overtime after hours or on weekends, and that absences would result in "a point" on her record. (*Id.* at lines 85–88). She was told that points had already accrued between May 2017 and August 2017, that these had been resolved by her vacation time, and that she had no remaining paid time off ("PTO") "because it had all been absorbed in her FMLA." (*Id.* at lines

92–95). She had also been given points for intermittent use of leave in August through October 2017, but these points were eventually removed. (*Id.* at lines 96, 120). When Christopherson inquired about using her FMLA leave as needed, she was told that "she would need to have her medical provider recertify her for 'flareups' and specify that she could take one or two days off each week for flareups." (*Id.* at lines 98–104). Christopherson's medical provider refused, "her paperwork was not revised to include flareups," and she was "forced to work a mandatory 40-hour week from October 2017 to April 2018 when her FMLA leave expired." (*Id.* at lines 115–120). As a result, Christopherson alleges that she suffered "undue stress and greater anxiety" from not being able to take time off when her anxiety spiked. (*Id.* at lines 123–25). Christopherson believes Polyconcept was inflexible with her schedule because it had a need to balance the number of "packers" and "decorators," of which she was one. (*Id.* at lines 126–30). But Christopherson also alleges that Polyconcept allowed others to work flexibly and could have accommodated her preferred use of leave with a different position. (*Id.* at lines 145–48). She further alleges that Polyconcept *willfully* violated her FMLA rights by "constraining [her leave] to fit a schedule of metrics." (*Id.* at lines 149–51).

*Third Allegation*

Christopherson's **third allegation** pertains to her absence from work on January 21, 2019. She alleges that on that date, she "called off from work" due to "body aches and flu-like symptoms." (*Id.* at lines 197–99). In April 2019, she learned she had received a point for that absence. (*Id.* at lines 215–16). Christopherson sought to have that point removed from her record by having her medical provider backdate FMLA paperwork related to another incident on January 29th of that year wherein Christopherson left work early and took several days off due to sciatica. (*Id.* at lines 200–01, 210–15). She was told Polyconcept would fax a request for paperwork to her

4

medical provider, but her provider never received it. (*Id.* at lines 221–23). And when Christopherson followed up with human resources managers she was told that they had "listened to her initial call-off recording" for January 21, 2019, wherein Christopherson said she had a "sore throat," that a sore throat is unrelated to sciatica, and that a sore throat is not an FMLA-eligible condition. (*Id.* at lines 224–28). Christopherson was offered no further opportunities to address the point she was given for her January 21st absence. (*Id.* at lines 230–31). She contacted the Department of Labor in Pittsburgh whose representative contacted Polyconcept, but Polyconcept indicated Christopherson had not taken an opportunity to correct the matter. (*Id.* at lines 232, 249–50, 252–54). Christopherson alleges that statement was false (*id.* at line 254) and that Polyconcept violated her rights under the Act by assuming sciatica and sore throat (*i.e.*, infection) were unrelated, giving false information to the Department of Labor, and retaining the disciplinary point against her (which hurt her opportunities for promotion), (*id.* at lines 259–61, 263, 270–71).

*Fourth Allegation*

With respect to Christopherson's **fourth allegation** she alleges that on an unspecified date in July 2019 she punched-in late because she "felt ill while preparing to leave her house." (*Id.* at lines 281, 288–89). Christopherson called the call-off-line on her way in to report she would be late. (*Id.* at line 283–84). She delayed punching in until 6:25am when she felt well enough to work. (*Id.* at lines 289–91). She received a half-point for her delay because she only had fifteen minutes of PTO remaining and could not otherwise have her tardiness between 6:15am and 6:25am excused. (*Id.* at lines 291–93). This half-point offense brought Christopherson to a total of "six points" which resulted in a warning. (*Id.* at lines 294–95). She alleges that she sought certification to designate her delay as FMLA leave and that paperwork was "completed by her medical provider to cover retroactively the time of her symptoms as well as testing and rest going forward." (*Id.* at

5

lines 301–04). And she alleges that "Polyconcept approved the FMLA" but that the "disciplinary half-point was not removed." (*Id.* at lines 306–07). Her point total kept her from being able to bid on other jobs. (*Id.* at 307–08).

In addition to these first four allegations of FMLA interference, Christopherson's Amended Complaint also attempts to state the following retaliation claims.

### *Fifth Allegation*

In Christopherson's **fifth allegation** she restates her FMLA interference claims as FMLA retaliation claims pursuant to 29 U.S.C. § 2615(a)(2) ("It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."). (*Id.* at lines 323–26). To that end, she alleges that in response to her attempts to invoke FMLA rights like calling off for two hours or retroactively designating leave time, Polyconcept intentionally overworked her, arranged her schedule to make it impossible to take time off, refused to seek secondary medical opinions, and provided incorrect information to Department of Labor, Pittsburgh. (*Id.* at lines 339–41, 353–55, 364–66, 372–74). And she alleges such "instances of retaliation were made as precursors to wrongful termination." (*Id.* at lines 374–75).[2]

### *Sixth Allegation*

Christopherson's **sixth allegation** appears to be twofold: she alleges that the facts underlying her first through fourth allegations were instances of Polyconcept's retaliation for an EEOC complaint she filed in March 2017, and that this constituted (1) a violation of Title VII and (2) a violation of Section 1981. (*Id.* at lines 383–86, 396–98, 412). For causation, she alleges temporal proximity between when she filed that EEOC complaint and the circumstances of her

---

[2] Christopherson indicates in her opposition to the motion to dismiss that she was laid off by Polyconcept on March 24, 2020. (Docket No. 42 at pg. 1).

first allegation, that is, when she was told she could not reduce her schedule from ten hours to eight by using her FMLA in or around April 2017.  (*Id.* at lines 427–28).  Additionally, she alleges that Polyconcept retaliated against her for the EEOC complaint by giving her smaller orders that made it more difficult to make her numbers and by holding a meeting to prove she was not being given more orders than others (in the wake of a lawsuit she filed against Polyconcept) that, in her view, constituted harassment.  (*Id.* at lines 439–44).  In all, these allegations form the basis of Christopherson's demand for over $100,000 in damages.  (*Id.* at lines 470–76).  Polyconcept has moved to dismiss all of the claims with prejudice. (Docket No. 38 at pg. 17).

II.     **Standard of Review**

When the Court considers a Rule 12(b)(6) motion to dismiss, it assesses factual allegations in the complaint to determine whether, accepting those allegations as true and construing them in the light most favorable to the plaintiff, "under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007).  While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555).  Moreover, while this standard "does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*,

550 U.S. at 570). The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

Where, as here, the courts evaluate *pro se* pleadings, such plaintiffs are afforded a liberal construction of allegations; however, courts are not required to accept legal conclusions disguised as statements of fact, unsupported conclusions, or unwarranted inferences. *See Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Thus, "a pro se complaint must still contain factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wallace v. Fegan*, 455 F. App'x 137, 139 (3d Cir. 2011) (internal quotation marks and citation omitted); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) (staking out the limits of this liberality principle in that courts will interpret *pro se* pleadings in a way that acknowledges "relevant legal principle[s] even when the complaint has failed to name" them, but will not excuse the failure to "allege sufficient facts … to support a claim").

Additionally, in the courts' consideration of whether claims—if they are to be dismissed—will be dismissed with prejudice, Federal Rule of Civil Procedure 15(a)(2) directs that leave to amend should be freely given "when justice so requires." Denial of leave to amend may be appropriate where there is "undue delay, bad faith, dilatory motive, prejudice, and futility." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).

### III.   Legal Analysis

The Court begins its assessment of the adequacy of Christopherson's Amended Complaint with her FMLA interference claims, *i.e.*, her first through fourth allegations. Under the FMLA, employees are "entitle[d] … to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(2). For "eligible employees," this means they are afforded "12 workweeks of leave during any 12-month period" to attend "a serious health condition" that keeps them from being able "to perform the functions of the position." *Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 245 (3d Cir. 2016). Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" FMLA rights. 29 U.S.C. § 2615(a)(1). The applicable regulations explain that "discouraging an employee from using such leave" is likewise unlawful. 29 C.F.R. § 825.220(b). As indicated above, a cause of action arising under Section 2615(a)(1) is an FMLA interference claim. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301 (3d Cir. 2012) (quoting *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005)).

**A.   Christopherson's FMLA Interference Claims (First through Fourth Allegations)**

As summarized *supra*, § 1 (**Background**), Christopherson's first, second, third, and fourth claims are that: she was told she could not use FMLA leave to call off two-hours daily in the spring/summer of 2017; she was not permitted to use her FMLA leave on an as-needed basis and was thus compelled to work a rigid 40-hours/week schedule without vacation time from October 2017 to April 2018; she received a point for calling off on January 21, 2019 and was not permitted to retroactively designate her absence as FMLA leave; and, when she received half a point for arriving late in July 2019, she was not permitted to designate that absence as FMLA leave either.

9

With respect to Christopherson's first and second claims, Polyconcept argues that such claims are untimely pursuant to 29 U.S.C. § 2617(c)(1). The Court agrees.

    *1. Christopherson's First and Second Claims are Untimely*

Section 2617(c)(1) imposes a two-year statute of limitations for FMLA claims. However, for willful violations of Section 2615 (Prohibited Acts), the statute of limitations is three years. *Id.* § 2617(c)(2) ("[S]uch action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought"). An FMLA violation is "willful" if the violation was knowing or if an employer showed reckless disregard. *Sampra v. United States Dep't of Transp.*, 888 F.3d 330, 334 (7th Cir. 2018) (applying the willfulness standard for Fair Labor Standards Act (FLSA) claims articulated in *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) to claims under the FMLA).

Polyconcept argues that Christopherson's first and second allegations are time-barred because they predate her initial complaint by more than two years. Christopherson retorts that she has alleged willful violations of the Act and that, accordingly, her claims are subject to the three-year statute of limitations. In return, Polyconcept argues that Christopherson has not alleged sufficient facts in support of an allegation of willfulness. Accordingly, the Court's consideration of this timeliness issue necessitates an evaluation of Christopherson's allegations of willfulness. The Court addressed timeliness once before in its Memorandum Opinion deciding Polyconcept's partial motion to dismiss. (Docket No. 24). Therein the Court explained that Christopherson's complaint was constructively filed April 16, 2020, and that none of her specific allegations in support of her first and second claims "falls within two years" of that date. (*Id.* at pg. 10).

Christopherson has not alleged facts in her Amended Complaint to bring her first and second claims within the two-year statute of limitations and, having considered Christopherson's

allegations of willfulness, the Court finds they are conclusory and unsupported. With respect to Polyconcept's refusal to permit Christopherson's use of leave to reduce her daily hours from ten hours to eight, Christopherson merely alleges that her supervisors' actions were "willful acts of refusing her need to invoke her FMLA privileges." (Docket No. 26 at lines 57–58). And with respect to Polyconcept's refusal to permit Christopherson's use of FMLA leave on an as-needed basis between October 2017 and April 2018, Christopherson again merely alleges that "Polyconcept's actions concerning this FMLA leave … constitute willful violations." (*Id.* at lines 148–49). Such "conclusory statements" are disregarded when the Court considers a Rule 12(b)(6) motion. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). Accordingly, willfulness being inadequately alleged, the two-year statute of limitations bars Christopherson's first and second claims.

2.  *Christopherson's First Four Claims are Inadequately Alleged*

In addition to being untimely, Christopherson's first and second claims—as well as her third and fourth claims—are inadequately alleged, *i.e.*, at this juncture she has failed to state a plausible claim of FMLA interference.

The elements of an FMLA interference claim are: "(1) [the plaintiff] was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA." *Ross v. Gilhuly*, 755 F.3d 185, 191–92 (3d Cir. 2014) (citation omitted). In this matter, the parties do not dispute that Christopherson was FMLA-eligible, nor that Polyconcept was subject to the Act. The relevant question with respect to

11

Christopherson's first four claims is whether she adequately alleged the other elements of an FMLA interference claim.

For Christopherson's first claim—that she was told she could not use her FMLA leave to reduce her schedule by two-hours daily and, as a result, she fell asleep at work and was written up for it—she has not adequately alleged that she was entitled to use her FMLA leave to reduce her schedule by two hours every day. The Court notes that it pointed out this very deficiency of Christopherson's allegations when it previously dismissed this claim without prejudice so as to give Christopherson the opportunity to cure the claim by amendment. (Docket No. 24 at pgs. 10–11). She has not done so. To the extent Christopherson's allegations are premised upon being written up for falling asleep, that disciplinary event is distinct from any refusal of Christopherson's rights under the Act. *See Salameh v. Sears Holding Mgmt. Corp.*, No. 08 C 4372, 2010 WL 183361, at *7 (N.D. Ill. Jan. 13, 2010) ("If the Court were to allow Plaintiff's claim to go forward … such a ruling would penalize [his employer] for making a ministerial choice …. If that were the case, employers would be forced to set aside reasonable business decisions in fear of being sued under the FMLA.") (cited in *Lichtenstein*, 691 F.3d at 309). Accordingly, the Court will dismiss Christopherson's first claim and will do so with prejudice on account of her failure to cure. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting "repeated failure to cure deficiencies by amendments previously allowed" among the reasons a district court might refuse leave to amend).

For Christopherson's second claim—that she had to work a rigid schedule between October 2017 and April 2018 because Polyconcept refused to allow her to use her FMLA leave on an as-needed basis—she has not adequately alleged a denial of benefits to which she was entitled. For this second claim, Christopherson also alleges that Polyconcept manipulated her medical provider's no-mandatory-overtime directive to a no-overtime directive to make her work a rigid

12

schedule, and that Polyconcept should have worked with her to create a more flexible schedule (Docket No. 26 at lines 163–65, 176–80) or should have temporarily transferred her to another position (*id.* at lines 164–69). Even so, as alleged in the Amended Complaint, the factual allegations underlying Christopherson's second claim are that she wanted to use FMLA leave on an as-needed basis and Polyconcept asked that her medical provider recertify her for "flareups," but Christopherson's medical provider refused to recertify her for flareups because "this was not the nature of her illness." (*Id.* at lines 98–104, 115–17).[3] Accordingly, her allegations do not show the FMLA benefits to which she was entitled, and she has not stated an FMLA interference claim. Because the Court previously afforded Christopherson the opportunity to amend her complaint in this regard (Docket No. 24 at pg. 10), the Court's dismissal of her second claim is with prejudice. *See Foman*, 371 U.S. at 182.

For Christopherson's third claim—stemming from Polyconcept's refusal to retroactively designate her January 21, 2019, absence as FMLA leave—Christopherson again fails to adequately allege entitlement to a benefit she was denied. As described *supra*, § 1 (**Background**) Polyconcept retroactively designated Christopherson's January 29th (and following) leave as qualifying FMLA leave due to Christopherson's sciatica but was unwilling to include her January 21st absence in that redesignation because on a recording of Christopherson calling off she stated she had a sore throat. As alleged, Christopherson did not request FMLA leave at the time of, or before, her January 21st absence. In such circumstances—when FMLA leave is not foreseeable—employees "must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). Christopherson alleges she did not address her

---

[3] FMLA regulations explain that intermittent leave or reduced schedule leave "must be medically necessary." 29 C.F.R. § 825.302(f). And, pursuant to Section 825.305(a), employers are permitted to "require that an employee's leave … due to the employee's own serious health condition … be supported by a certification issued by the health care provider of the employee."

January 21st absence with Polyconcept until she learned she had received a point for the absence in April 2019. (Docket No. 26 at lines 215–16). Christopherson and Polyconcept *could* have decided to retroactively designate January 21st as an FMLA leave-day, 29 C.F.R. § 825.301(d), but Christopherson has not adequately pled an entitlement to that. And, to the extent that Christopherson's third claim and argument opposing its dismissal is premised on Polyconcept's purported failure to further investigate the connection between her January 21st absence and a serious health condition, she mistakes certain employer rights to verify medical certifications pursuant to 29 C.F.R. § 825.307 as employee entitlements. Accordingly, her third claim is dismissed. Christopherson has not requested leave to further amend her third claim and it does not appear to the Court that amendment would be anything other than futile; therefore, the dismissal of Christopherson's third claim is with prejudice. *See Foman*, 371 U.S. at 182.

Finally, with respect to Christopherson's fourth claim—that the half point she received for tardiness on an unspecified date in July 2019 should have been removed by retroactively designating her ten-minute tardiness as FMLA leave—Christopherson does not clearly allege a plausible FMLA interference claim in her Amended Complaint at this time. However, the Court will dismiss this fourth claim ***without prejudice*** because there is a lack of clarity in the pleadings regarding whether Christopherson was entitled to leave and gave appropriate notice under the circumstances. In circumstances such as a medical emergency, an employee must give notice of leave to his or her employer as soon as is "practicable." 29 C.F.R. § 825.302(a). The facts alleged in Christopherson's Amended Complaint indicate she called Polyconcept's call-off-line on the way into work on the day she was late. (Docket No. 26 at lines 283–85). At an unspecified time thereafter, she was told she would receive a half point for her tardiness because she had no remaining PTO. (*Id.* at lines 291–93). When Christopherson indicated that she had been ill, she

and Polyconcept discussed an "FMLA … accommodation" and she was "given the paperwork which was then completed by her medical provider." (*Id.* at lines 299–303). *See* 29 C.F.R. § 825.302(c) ("In all cases, the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken."). Christopherson alleges that, as a result of these efforts, "Polyconcept *approved the FMLA*" but the half point was nevertheless not removed. (*Id.* at lines 306–07 (emphasis added)).[4] Polyconcept argues that because retroactive designation of leave is permissive, Christopherson cannot state a claim for entitlement to removal of that half point. (Docket No. 44, pg. 6 (citing 29 C.F.R. § 825.301(d); *Njaim v. FCA US LLC*, 764 F. App'x 513, 515 (6th Cir. 2019)). But this ignores certain facts alleged in the Amended Complaint that suggest adequate notice of a medical emergency, and the Court will dismiss without prejudice to give Christopherson the opportunity to allege the timing and content of her discussions with Polyconcept concerning this July 2019 tardiness with greater specificity.

## B. Christopherson's FMLA Retaliation Claim (Fifth Allegation)

Christopherson's Amended Complaint now purports to allege FMLA retaliation.[5] It is unlawful for an employer to retaliate against an employee "for having exercised or attempt[ed] to exercise FMLA rights." *Hansler v. Lehigh Valley Hosp. Network*, 798 F.3d 149, 158 (3d Cir. 2015) (quoting 29 C.F.R. § 825.220(c)). The elements of an FMLA retaliation claim are: the

---

[4] Polyconcept argues that Christopherson's FMLA paperwork covered only "testing and rest *going forward*" with respect to her July 2019 medical issues—that is, it did not apply to her tardiness. (Docket No. 44 at pg. 6). But making this argument, Polyconcept overlooks that Christopherson alleged that her FMLA paperwork "was … completed by her medical provider *to cover retroactively the time of her symptoms* as well as the testing and rest going forward." (Docket No. 26 at lines 303–04 (emphasis added)). And, of course, the Court must accept Christopherson's account of the facts when considering Polyconcept's 12(b)(6) motion. *Phillips*, 515 F.3d at 233.

[5] Polyconcept asks the Court to dismiss this claim because the Court did not indicate that Christopherson was permitted to add new causes of action by amendment. (Docket No. 38, pg. 14). The Court declines to dismiss Christopherson's retaliation claim on this basis.

invocation of a right to leave; an "adverse employment decision"; and a causal relation between the adverse decision and the "invocation of rights." *Id.* at 158–59; *see also* 29 U.S.C. § 2615(a)(2). FMLA retaliation claims are evaluated in much the same way as employment discrimination claims. *Ross*, 755 F.3d at 193. Therefore, were the Court considering a motion for summary judgment, the Court would ask whether any legitimate reasons Polyconcept offered for adverse employment actions were pretextual pursuant to the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden shifting analysis. But at this time, as the Court considers Polyconcept's motion to dismiss for failure to state a claim, the Court asks only whether Christopherson has alleged sufficient facts to "raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)

Having considered Christopherson's new allegations of FMLA retaliation, the Court determines she has not offered adequate factual allegations to state such a claim; rather, it appears that her allegations of retaliation are a mere conclusory gloss on her FMLA interference claims. In the Amended Complaint, Christopherson has taken her FMLA interference claims—*e.g.*, Polyconcept's refusal to let her call off two-hours daily (first claim) and refusal to permit her use of FMLA leave on an as-needed basis (second claim)—and adds that Polyconcept intentionally overworked her and manipulated her schedule to make it impossible to take time for the express purpose of retaliation for her invocation of FMLA rights. (Docket No. 26 at lines 334–40, 351–55). She also alleges that Polyconcept's refusal to seek a medical opinion for her January 21st absence and its purportedly false representations to the Department of Labor were also retaliatory insofar as the "main purpose" was "to harm her standing with the company in retaliation for utilizing FMLA privileges." (*Id.* at lines 364–66). Likewise, she alleges that retention of the half point against her for her tardiness in July 2019 was retaliatory. (*Id.* at lines 367–73). This vague

16

reference to retaliatory intent addended to Christopherson's FMLA interference claims does not plausibly allege a claim for FMLA retaliation. Accordingly, Christopherson's FMLA retaliation claim will be dismissed. And because Christopherson's FMLA retaliation claim is duplicative of her FMLA inference claim, the dismissal is with prejudice except insofar as Christopherson might amend her pleadings to state a plausible claim of interference and/or retaliation regarding Polyconcept's refusal to designate her July 2019 tardiness as FMLA leave.

### C. Christopherson's Title VII and Section 1981 Retaliation Claims (Sixth Allegation)

Having resolved Polyconcept's motion to dismiss Christopherson's FMLA interference and retaliation claims, the Court turns to her allegation that the adverse employment actions she discussed throughout her Amended Complaint were in retaliation for filing a complaint with the EEOC in March 2017 about discriminatory practices at Polyconcept.

To the extent that Christopherson asserts a claim arising under Title VII, her claim will be dismissed because, as the Court already observed in its order denying her motion to file a second amended complaint, Christopherson has not "allege[d] that she exhausted her administrative remedies related thereto by filing a charge of discrimination with the EEOC." (Docket No. 34 at pg. 5 (citing *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013)).[6] In her opposition to the motion to dismiss, Christopherson references "two complaints" she made to EEOC "in 2019." (Docket No. 42 at pg. 3). However, that does not give the Court any indication that Christopherson's proposed Title VII claim would fall within the scope of any prior EEOC complaint. *See Mandel*, 706 F.3d at 163. Accordingly, Christopherson's Title VII claim will be dismissed with prejudice for failure to exhaust. *See Wilson v. MVM, Inc.*, 475 F.3d 166, 174–76

---

[6] Therein the Court further explained that "any new charge of discrimination … would be untimely" given that Title VII requires filing a complaint with the EEOC within 300 days of an unlawful practice. (*Id.*).

17

(3d Cir. 2007) (explaining the appropriateness of addressing administrative exhaustion of a Title VII claim when deciding a 12(b)(6) motion to dismiss).

That brings us to Christopherson's apparent invocation of 42 U.S.C. § 1981, which does not require exhaustion. In the Amended Complaint, Christopherson posits that because of her March 2017 EEOC discrimination complaint as well as a resultant EEOC investigation and a related lawsuit she filed against Polyconcept, Polyconcept retaliated against her. (Docket No. 26 at lines 383–87, 392–98). This retaliation claim is premised on the same facts alleged in support of her FMLA claims, *i.e.*, overwork and the write-ups and disciplinary points she described in her first through fourth claims. (*Id.*). She adds that a meeting was held in September 2018 after she filed her lawsuit against Polyconcept that was "to prove to her that she was not given more orders than certain other workers as she had complained," but that she was not given notice of the meeting and "considered the meeting a form of harassment." (*Id.* at lines 438–44). Accordingly, she asserts that filing an EEOC claim in March 2017 is what started this series of retaliatory events in violation of Section 1981.

Section 1981 "prohibits employment discrimination on the basis of race and national origin." *Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 180 (3d Cir. 2020). Section 1981 also provides for a "claim of an individual (black or white) who suffers retaliation because he has tried to help a different individual, suffering direct racial discrimination, secure his § 1981 rights." *Est. of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 797–98 (3d Cir. 2010) (quoting *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 452 (2008)). The elements of such a claim are engagement in protected activity, an adverse employment action, and a causal connection between the two. *Id.* at 798. This is the same standard as applies in a Title VII retaliation claim. *Id.* at 798 n.14.

Polyconcept argues that the Court should dismiss Christopherson's Section 1981 claim for retaliation with prejudice "because Section 1981 only provides a cause of action for discrimination on the basis of race and national origin, which [Christopherson] has not alleged here." (Docket No. 38, pg. 16 (citing *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987)). While the Court agrees that Christopherson's allegations in support of a Section 1981 retaliation claim are, at present, too vague to state a plausible claim, the Court will permit amendment to afford Christopherson an opportunity to plead facts that might fill gaps that presently exist in her pleadings. For instance, Christopherson alleges that she "made a complaint of discrimination to the [EEOC]" in March 2017, but she has not alleged whether that complaint pertained to race or national origin discrimination. Because Christopherson might be able to amend her pleading to state a plausible claim in this regard, leave to amend cannot be said to be futile. *Shane*, 213 F.3d at 115.

## IV. Conclusion

For all the forgoing reasons, Polyconcept's Motion to Dismiss the Amended Complaint (Docket Nos. 35 & 37) is **granted in part** and **denied in part**. The motion is denied insofar as the Court hereby dismisses Christopherson's Fourth Claim (July 2019 FMLA Interference), any related retaliation claim, and her Section 1981 claim **without prejudice**. The motion is granted insofar as the Court hereby dismisses Christopherson's remaining claims **with prejudice**. An appropriate order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Dated: November 29, 2023

Cc/ecf: All counsel of record

ROSALYN CHRISTOPHERSON (via U.S. Mail)
1770 Greensburg Road
Lower Burrell, PA 15068
Email: rc1066rc@aol.com
PRO SE